After the table is cleared there, you may call the next case. May it please the court. My name is David Bell. I work for the Federal Defender's Office in Memphis, Western District of Tennessee. I represent Leonardo Williams in this case. This time I'd like to reserve three minutes for rebuttal. Good morning, your honors. This is a case about evidence and whether evidence should have been allowed in a case that first was set for a suppression hearing based on the idea that the evidence was tampered with and tainted, violating Mr. Leonardo Williams' due process rights. Also... Counsel, I just stop you right here because I know you'd like to go deep on that one. But I wonder if it's worth it in as much as it seems the jury did not convict or did not find guilt with respect to the items that are claimed to have been tampered with. The drugs from the home, the jury said they didn't find guilt on that. And they did find guilt on the controlled by, three controlled bys. And they heard... Two. Only two? Were there two? One. I'm sure I got the three. Three day jury trial. There's my three. But that evidence, including the audio recordings, was all there for the jury. So your due process argument concerns all the back and forth with the drugs and back at the lab and the officer going in. But that wasn't... I understand it to be the jury didn't convict with respect to those drugs. Your Honor, that is correct. The jury was hung. There was a mistrial declared. And in fact... The government dismissed the charges. Absolutely, Your Honor. After all of that evidence came to light, the government did dismiss charges. Those were counts three, four, and five. And the, I believe, third superseding indictment in the case. That is an absolutely excellent point that I think misses the idea that the jury was still introduced all of that evidence from the search of the home. And when the jury... That's your hook. I get it now. Your hook is they heard all this other stuff. And it just made them think this is a drug dealing bad guy. The problem is, in a case like this, is we'll never know. Well, we do know that they also heard the audio of the controlled buys. So we know they heard enough that might not have any unconstitutionality wrapped on it. Again, I think the problem that occurs in a situation like that is that when a jury heard all that evidence, we're not really sure what the jury used in making its decision. We know that a mistrial was declared because they could not come to a conclusion regarding counts three, four, and five. But the problem is when all of that evidence was allowed by the court, despite the fact that there had been evidence of tampering and tainted evidence, then we'll never know unless somehow the court was to bring back in all the jurors, and obviously that would be improper to get their opinions on what they considered and what they didn't. And one other thing, there was no Rule 29 motion filed. That's right, Your Honor. So the review by this court is what? Plain error? Yes, Your Honor. Plain error. And that's part of the reason why it's so important to consider the evidence in the first place with the motion to suppress. And while I understand that when you look at the Allen case, when we're dealing with a due process allegation on a motion to suppress like this, the Allen case puts a high burden on the defendant, we understand. There has to be a possibility of misidentification or alteration that must be eliminated as a matter of reasonable probability. And the Allen case also went further to say that where there was no evidence indicating tampering, the courts presumed that public officers discharged their duties properly. That makes it difficult for us, we understand. But absent video evidence of a police officer going into the property and evidence room and ripping apart baggies or substituting evidence, or actually getting on the stand and testifying, whether before a judge or a jury, that yes, I altered this evidence, yes, I tampered this evidence, and here's the reason why, there has to be some sort of middle ground to explain what happened in a case like this. Just to remind the court of the facts, and I know the court has reviewed this, interesting, this is the case where I have had more facts in the actual argument than law, it seems like. But the facts are so in detail that it's important to consider. The original seizure at the house on September 20, 2012, is a situation where they say that there are 65 grams of cocaine recovered. The police officer, Chisholm, states that his dog, or the police dog, alerted on an area where he found a large bag, which he then tested the property and evidence room and tested positive for cocaine. And then we come back with a report from the Tennessee Bureau of Investigation's lab after indictment, while preparing for trial, that says not only is it not 65 grams of controlled substance, it's 44. Oh, and by the way, 20 of those grams aren't even a controlled substance. Does that have anything to do with you saying, well, yeah, but could you carry over to other charges? Well, when the... Plain error review, how are you going to get there? Your Honor, if you're talking about the second argument when it comes to the jury's decision, when we're considering actual evidence that has been presented before a jury that a jury declared a mistrial on, or at least, excuse me, the judge declared a mistrial on because they were out for several, three days and could not come to a decision, came back and said they couldn't come to a decision, it's plain error to actually allow that evidence to be introduced at the trial because of the effect that it can have on a jury. Are you going to get to your resentencing argument? Certainly, Your Honor. I can move there now. And one of the things that I would have the court take into account is the government is correct in this matter in that Mr. Williams was sentenced, was deemed to be a career offender by the district court after being found guilty on counts one and two. And so that is difficult to overcome. However, if the court will note, the guideline range, according to the court, was 262 to 327 months under the career offender guideline. And the court actually imposed a sentence, all things considered, but taking the 35-53 factors into account as well as the intent of the career offender guideline and imposed a sentence of 216 months. If the court had, instead of considering all of the evidence, including the evidence of the charges that were a mistrial was declared and the government dismissed the charges, if the court had taken into account only the amounts from the sales, then the actual guideline range without being a career offender would have been 27 to 33 months as opposed to the 77 to 96, or excuse me, 63 to 78 months that the court was determining in looking at the variation between the career offender guideline and what the actual amount added up to. Okay? When considering that, it is not unreasonable to think that that sentence of 216 months would have been further reduced with the difference between 67 to 78 months and 27 to 73 months. But your job is to have to convince this court that there was an abuse of discretion. Yes, Your Honor. And not varying downward more. Yes, Your Honor. So your argument, the words you're using don't really climb that hill. Your Honor, respectfully, we believe there was an abuse of discretion. The reason why is that when the judge considered that evidence, despite everything that had been presented at trial, despite everything that had been presented, and the fact that those counts were declared a mistrial and dismissed later on, when the court considered that evidence in imposing that sentence and determining that's what the guideline would have been without the career offender designation, when the court did so, that was an abuse of discretion because the court was not properly taking into account the difference between the regular traditional guideline range based on the proved conduct, the conduct that Mr. Williams was found guilty of. In the end, though, how can you say the court didn't when the court did take the low end, the low end of that range? You know, even the lower range, the court came out within that, correct? Well, actually, the court, are you talking about in the final sentence? Mm-hmm. The court actually, whereas the previous career offender guideline had been 262 to 327, I have to be honest with the court, the court imposed a sentence of 216 months. So rather than the low end, the court actually went below it. The court actually varied from the career offender guideline. That's what I'm saying. Yes. Abuse of discretion. Yes, and it makes my argument that much more difficult. Certainly, Your Honor. Well, today is tough. Certainly. Certainly it is, Your Honor. But I think that the consideration of those substances gave the court a different sort of jumping off point to where it would decide the proper sentence would be. So if the court had actually used the proper guideline range of the 27 to 33 months as the comparison to the career offender guideline, then the court would have substantially varied below that 216 months. And not considering the proper guideline, considering those other substances that certainly had not been proven beyond a reasonable doubt, of course, that's not the decision there. It's a presumption of the evidence when it comes to sentencing and what the relevant conduct is. We can't tell from the record exactly how much attention the sentencing judge gave to those non-career guidelines, can we? Well, he wants to know what they are, but that's kind of the end of it. We cannot see. There is not a long soliloquy by Judge McCullough regarding it. You're absolutely correct. We do know he varied from the career offender guidelines, so we know something had to be taken into account with the 3553A factors, and I would submit that a large part of that was the distinction between the career offender guidelines and what the amount would have been had Mr. Leonardo Williams not been designated as a career offender. That being said, we do not know exactly every single factor. Remind me what the difference in the sentence would be. Well, you can't really speculate. I can talk about ranges, if Your Honor would. Do you mean the difference between... I forget. What's the difference in the range if he had used the... If he had used, even if the judge had used all of the evidence, all of the evidence that was recovered, even though there was a mistrial on three of the counts, then the guideline range would have actually been 63 to 78 months as opposed to 262 to 327. We submit to this court, Your Honor, that if the judge had not taken into account those other substances from the conduct that was later dismissed, that actually the difference would have been between 262 to 327 months with the career offender designation down to 27 to 33 months, which is an incredible difference and part of the problem with the career offender law in general. That being said, we would ask Your Honors to take into account what was presented in court and in the suppression hearing and find that there was tampered and tainted with evidence here and that that violated Mr. Williams' due process right. Thank you. Thank you. May it please the court. My name is Keenan Carter. The United States respectfully requests that this court affirm the district court's denial of the defendant's motion to suppress, affirm the jury's finding of guilty on two counts of possession of cocaine with intent to distribute in violation of 21 United States Code Section 841 and affirm the 216-month sentence imposed in connection with the guilty. Could you help me out? I was not familiar with the district court's soliloquy on why he wanted to look at the non-career offender guidelines. Is that common practice in district court in sentencing now? I think it's common practice for that particular judge. Judge McCollough stated that in the signing, it was a case where defense counsel was asking for evidence and Judge McCollough indicated that in the signing, whether or not to vary, he wanted to determine what the guidelines would have been if Mr. Williams... Without the career offender. Yes, Your Honor. Well, if he does that all the time, why isn't the defense counsel's argument a good one? We ought to send it back. It's plain error that he used the wrong guidelines to come up with the non-career offender guidelines. Your Honor, the United States would submit that ultimately Judge McCollough did not use the wrong guidelines. As is conceded, the guideline range was the career offender guideline range. His guideline range was 262 to 327 months. It was a properly calculated guideline that was used. And Judge McCollough varies four years beneath that guideline range, and because of that, the United States... He used the wrong non-career guidelines. That's plain error. If he really used those guidelines, and I can't tell for the record whether he did or not. He wanted to know what the non-offender guideline range was. And the non-offender guideline range should have been, I think, 63 to 78 months. The United States, with regard to the sentencing issue, would simply state that a properly calculated within-guideline sentence, in this case a below-guideline sentence, should receive a rebuttable presumption of reasonableness. And when a court varies downward, an even greater presumption of reasonableness. So it's difficult for the United States to see how a sentence that's four years below a properly calculated guideline range can be deemed an abuse of discretion on the part of the lower court. With regard to the suppression issue, it seems that the defense or the appellant is taking issue with a bag that was recovered from the September 20th search warrant that was executed at the defendant's home. During the course of that search warrant, a large bag was recovered that the officers initially thought contained cocaine, approximately 20 grams of a substance. When that substance was taken to the Tennessee Bureau of Investigation for analysis, it was determined that it was negative for controlled substances. When the agent in charge ultimately learned of the Tennessee Bureau of Investigation's findings, he made an appointment with the Memphis Police Department Property and Evidence Room, and he went to the Property and Evidence Room and had someone with the Property and Evidence Room do a presumptive test, which also confirmed that that substance was negative for controlled substances. So again, we have a case here where while an argument is made that evidence was tainted or manipulated and in this case the evidence was determined not to be cocaine, not to be a controlled substance. And the jury got to hear that. Mr. Bill got to argue before the jury that the Memphis Police Department, they got at least one thing wrong. That was the argument. So they might be wrong on other things as well. So that evidence came in, but more importantly, the jury did not convict on any of that evidence. The evidence from the search warrant was related to counts three, four, and five. The jury was not able to reach a verdict on those three counts, and the government eventually dismissed those counts after trial. And when you look at the counts that the jury did convict the defendant on, they were separate and isolated counts. They had nothing to do with the evidence that was recovered on September 20th of 2012. The first count related to a controlled buy on September 13th of 2012. With regard to that count, the West Tennessee Drug Task Force had arranged for a controlled buy of three grams of cocaine from the defendant. With regard to that, they had a confidential informant call the defendant, arrange to buy cocaine from the defendant. That confidential informant eventually, Mr. Burroughs, testified at court. They actually called the defendant. The defendant agreed to sell three grams of cocaine to him for $225. That testimony was bolstered by the fact that that telephone call was recorded. So the jury actually got to hear the defendant's voice, hear his own voice tell and express a desire to sell Mr. Burroughs cocaine, three grams of it, for $225. Mr. Burroughs then proceeded to the defendant's home, where he was wearing a recording device. And while inside the defendant's home, the defendant again expressed a desire to sell Mr. Burroughs cocaine. Mr. Burroughs testified to that fact, and his testimony was bolstered by the fact that we played the audio recording from inside the home, where the defendant again talked about the price and the quantity that he wanted to sell Mr. Burroughs the cocaine for. Your opposing counsel seems to say all that poisoned the well on the other two counts. What's your response to that? My response is that the dates and the evidence are too distinct and isolated for there to have been any poison. And the only poison from the quote-unquote manipulation and taint was evidence that what officers thought was cocaine ended up not being cocaine. If anything, the jury – if anything, that fact benefited the defendant, and the fact that the jury convicted on two counts from the isolated sales and wasn't able to reach a verdict on the other three counts, I think that shows that the jury was not confused and the jury was able to easily see what evidence went to which counts. With regard to the sufficiency of the evidence on count two, the Drug Tennessee Task Force did the exact same thing. They arranged another controlled buy, and that controlled buy, the telephone call was recorded, the actual buy was recorded within the home. They got to hear the defendant's voice again expressing a desire to sell cocaine. But also, even more importantly, going to those two counts, on the date that the search warrant was executed, the defendant himself actually gave a video statement. And in that video statement, the defendant, which the jury got to hear the defendant on video, they got to hear him voice, got to see him admit to possessing cocaine. They got to see him admit to having previously sold cocaine, even though he said he hadn't sold it in over two years. He testified that he possessed cocaine, that he used cocaine, that he had a history of selling cocaine. So there was just a lot of evidence to go toward the first count, the second count, that the United States would submit that did not cause any confusion on the part of the jury. If there are no further questions? All right. You don't have a rule that you have to use all your time. Thank you, Your Honor. Thank you. Thank you. May it please the Court, just a few points to bring back up. Regarding the original investigation with the search warrant, I did want to point out that, again, the 20-gram difference, 65 to 44 grams, between the amount of drugs that Detective Chisholm stated that he had recovered, as opposed to what was actually found by the TBI to have been recovered. I do think that opposing counsel brought up something that I also think goes to the same idea of tampering with the evidence, and I think it's important to bring up. Basically, after the TBI, and when I use TBI, I mean Tennessee Bureau of Investigation, so that's the lab that tested it after it got sent off, after Mr. Williams was indicted. Not only did that report say that instead of just possible fake controlled substances as well, there were tablets found that indicated to be MDMA, also known as a street drug, as ecstasy, which was never reported by any of the police officers. Instead, we also found out about the differences in the weight, and I think it's important that opposing counsel brought up that after that, Chisholm went back to the Memphis Police Department Property and Evidence Room. We only found this out at the actual suppression hearing, but went back, according to the government, made an appointment, but there are no reports, there's no documentation, there's no tests that are shown, there's nothing that's been turned over to defense, and in fact, at the suppression hearing, Chisholm actually testified that he didn't know, he thought a report would have been made, but he didn't know. So there were no tests of this done. At the first suppression hearing, Detective Chisholm stated that he had actually felt the bags with his hands to feel where the tablets of MDMA or ecstasy had been, but then at the second suppression hearing, he says all he did was observe the testing of the substances, which his partner, Sislega, who was the evidence custodian, confirmed. He went back to that second one. So there's something going on in this case with evidence disappearing, going from palace... This is your jury argument. Your Honor, I do, and it was somewhat successful, to be honest with you, Your Honor, but I do want to point out that there has to be a point when we're dealing with due process and it comes to tampering with evidence where outside of a video recording showing somebody tampering with evidence... But we've already talked about how we don't think that mattered in the end here. They hung on that. I think it should matter to this Court when making a determination as to whether the suppression motion should have been granted. Thank you, Your Honor. Thank you, and case is submitted.